KINDRICKS v. MACHIN.

Opinion delivered September 30, 1918.

1. MUNICIPAL CORPORATIONS—SALARY OF MAYOR—MODE OF FIXING.— Under the statutes which provide that the mayors of cities of the first class shall receive such salary as their city councils may designate or fix, and "when once fixed the same shall not be increased or diminished during the term to which they may have been elected (Kirby's Dig., § § 5483, 5599 and 5617), the particular manner in which the council shall act in so doing is not prescribed and the council may, in its discretion, exercise its power in any usual and appropriate manner.

2. SAME—SALARY OF MAYOR—MODE OF FIXING.—By an ordinance of March 31, 1908, the city of Argenta fixed the salary of the mayor at $125 per annum. By an ordinance of January 18, 1916, it was provided that the mayor should assume general supervision and control of the electrical and commercial light department. From that time the mayor was allowed "an expense account" the monthly sum of $150, which was the amount previously paid to the manager of the electrical department. *Held,* that the purpose of such appropriations was to increase the salary of the mayor, and that such appropriations were valid.

Appeal from Pulaski Chancery Court; *J. E. Martineau,* Chancellor; affirmed.

### STATEMENT OF FACTS.

This action was instituted by two residents and tax payers of the city of Argenta against the clerk and treasurer of the city, respectively, to enjoin the payment of the sum of $150, a monthly sum allowed the mayor of the city of Argenta by resolution of its council, which, so far as is pertinent here, reads as follows:

"That there shall be, and is hereby appropriated out of any moneys now on hand, or that may hereafter accumulate in the general funds of the city, the sum of $150 per month, from July 1, 1917, for the current and incidental expense of the mayor's office." This resolution was passed July 16, 1917.

The plaintiffs alleged that the purpose of the resolution was to allow the mayor extra compensation for his services as mayor, and that its effect was to increase the salary of the mayor, contrary to the statutes in such cases provided.

The defendants did not answer, but D. M. Pixley intervened and set up that he was elected mayor of the city of Argenta on the first Tuesday of April, 1917; that he qualified on the following Monday and had been in office since that time; that the clerk and the treasurer of the city, respectively, had no real interest in the controversy, and that he, being the real party in interest, was entitled to defend the action. He stated that the city council, by formal vote, had allowed Mord Roberts, who was acting mayor *pro tem* for the city of Argenta from December,

1915, to November, 1916, the sum of $150 per month as expense account during such time, and had allowed to J. P. Faucette, who had resumed the office, the same monthly sum from November, 1916, to April 9, 1917, the latter being the date when intervener Pixley qualified as mayor.

He alleged that if the allowance thus made be deemed the salary or compensation, instead of expense, that the city council had increased the salary of the mayor and had fixed it at the sum of $1,925 per annum, before intervener was elected and entered upon the duties of his office. He further set up, that prior to January, 1916, the city of Argenta, by ordinance, employed a manager of its municipal electric light plant and fixed his salary at the sum of $150 per month; that on January 18, 1916, the duties of said manager were, by ordinance imposed upon the mayor, and that such duties were not ordinarily incident to the office of mayor; that the sum of $150 per month allowed to J. P. Faucette, was paid by Faucette to Roberts for services performed by Roberts as manager of the lighting plant, and not for his services as mayor; that these services rendered by intervener and his predecessors in office as manager of the electric light plant, were such as to entitle them to additional compensation therefor in the sum of $150 per month. Intervener prayed that the complaint be dismissed for want of equity.

Plaintiffs, to sustain their contention, introduced an ordinance of March 31, 1908, of the city of Argenta which provides as follows: "That salary shall be paid commencing April 1, 1908; mayor's salary, per annum, $125; members of the city council, for each regular meeting, $1."

Also an ordinance of January 18, 1916, which provides as follows: "That the mayor shall have and assume general supervision and control for the maintenance and management of the electrical and commercial light department of the city, and all employees in said department shall be subject to his orders, and all matters pertaining to purchasing materials and supplies, and mak-

ing repairs, fixing rates and adjusting matters of disagreement between consumers and the city, and all other matters pertaining to the management of the said department shall be under the direct control, and subject to the orders and approval of the mayor.''

Plaintiffs then introduced the resolution of July 16, 1917, as set forth in their complaint.

Evidence on behalf of the intervener which was undisputed, proved that after the passage of the ordinance of January 18, 1916, the office of manager of the electric light department was abolished, and his duties were imposed upon the mayor. Predecessors of the intervener in the office of mayor had regularly been paid a monthly allowance which is designated in the record as ''expense account.'' The allowance between December, 1915, and October, 1916, amounted to $150 per month except for the months of February and October. The allowances for those months were, respectively, $179.10 and $174.10. Beginning with November, 1916, and ending April 9, 1917 (the date when the intervener was inducted into office), there was a monthly allowance of expenses for the mayor's office of $150, except in November, 1916, when the allowance was for $166 and in January, 1917, the allowance was $164, and the amount to April 9, 1917, was $200.

Mord Roberts testified that he was elected mayor *pro tem* of the city of Argenta during the absence of J. P. Faucette, the regular mayor. Prior to witness' incumbency, Argenta had a manager of its electric light department. The city furnished that department, and it did a big business. It paid the manager of that department $150 per month. After he assumed the duties of manager of the electric department, he installed a new lighting system. He had to make rates, and it took a good deal of his time. The sum of $150 per month was allowed him as compensation. The city paid the manager of the electric department the sum of $150 per month.

After Mayor Faucette returned and assumed his duties as mayor, he was in bad health, and witness con-

tinued to discharge his duties as manager of the electric light department, and the mayor gave witness his personal check every month for the sum of $150. This amount was paid by virtue of an allowance made by the council each month. The extra amount over that sum for the months mentioned, represented expenses for witness' railroad fare and hotel expense in going to Huntington, Arkansas, and in going to St. Louis, Missouri.

The intervener testified that he went into office April 9, 1917. He knew that his predecessor had received a compensation for the previous two years which amounted to $150 per month in addition to the annual salary of $125. He had been in control of the municipal light plant. Practically all lights in Argenta were furnished by it. It made a profit of $9,000 or $10,000 per year. The duties of the manager of the plant, which the witness was performing, were "to fix the rates, adjust all disagreements and get new business, confer with electricians in regard to running new lines, see that the department was kept up—all the wiring and poles—and receive their reports." Witness had received no other compensation for his services than that above mentioned.

Upon the above testimony the court found in favor of the intervener and entered a decree dismissing the complaint for want of equity. From that decree is this appeal.

*Gardner K. Oliphint,* for appellants.

1. The payment is an increase of the mayor's salary during the term and contrary to law. Kirby's Digest, § § 5483, 5599; 52 Ark. 541, 547; 53 *Id.* 205, 208; Throop on Public Officers, § 500; Kirby's Digest, § § 5638, 5643; 2 Abbott on Mun. Corp., § 685-6, pp. 1628-29-30; 15 Wend. 44; 29 Barb. 204; 34 Ark. 303; 21 N. W. 333.

2. Intervener can not justify the increase because he was manager of the light plant. That was a part of his duties as mayor. Kirby's Digest, § § 5616-17.

3. Parol testimony was improperly introduced. 88 Ark. 265.

*Cockrill & Armistead,* for intervener, Pixley.

1. The salary or compensation was fixed before Mayor Pixley was elected to office. Kirby's Digest, § § 5599, 5617; 28 Cyc. 275; 34 Ark. 303; 83 Minn. 3, 85 N. W. 717; 50 Mich. 260.

2. The additional compensation was for extra services as manager of the light plant, etc. 28 Cyc. 454; 33 Mich. 61; 57 N. E. 96; 80 N. W. 608; 22 U. S. Ct. Ct. 126; 4 Mackey, (D. C.) 281; 2 Cliff. (U. S.) 325; 47 Mich. 236; 19 *Id.* 376; 64 Me. 249; 85 Ga. 734; 49 N. Y. 280; 56 Neb. 657; 63 Mich. 271; 19 La. Ann. 274; 104 Iowa, 625; 21 How. (U. S.) 463; 35 N. J. Eq. 442.

3. In any event Pixley is entitled to the increase as manager of the electric light department. 98 Ark. 39; 61 *Id.* 397.

WOOD, J., (after stating the facts). The statutes of the State provide that the mayor of cities of the first class shall receive such salary as their council "may designate" or "fix," and, "when once fixed the same shall not be increased or diminished during the term to which he may have been elected, by way of fees, fines or perquisites." Secs. 5483, 5599 and 5617 of Kirby's Digest.

It is clearly shown by a preponderance of the evidence that it was the intention of the city council of Argenta, especially after the office of manager of its electric light department was abolished and the duties of that position were imposed upon the mayor, to allow the mayor in addition to the salary of $125 per annum which had been fixed in 1908, the sum of $150 per month, or an annual salary amounting in the aggregate to the sum of $1,925.

Mord Roberts assumed the duties as acting mayor in October or November, 1915, and "expense accounts" appear in the record which show that from December 20, 1915, allowances were approved by the city council consecutively and continuously thereafter, in the sum of $150 per month up to April 9, 1917, when the appellee, Pixley, was inducted into office. Roberts testified that when he

went in as acting mayor, it was understood between him and the city council that he was to receive as compensation the sum of $150 per month. This monthly amount the city council approved as long as he acted as mayor.

The allowances were made under the designation "expense account" including the month prior to December 20, 1915, and continuing to October 20, 1916. After Mayor Faucette returned, the monthly allowance was continued under the same designation ("expense account"), until his term of office expired April 9, 1917.

Now, it is wholly immaterial that these monthly allowances were designated as "expense account." The undisputed evidence shows that the purpose in such allowance was to increase the salary or compensation of the mayor on account of the additional duties that had been imposed upon him in managing the electric light department. It is true that a more direct and appropriate method of increasing the salary of the mayor of the city of Argenta would have been by ordinance or resolution, naming the aggregate amount per annum to be paid monthly, but the fact that such increase was not made in this particular manner does not render the action of the city council in increasing the salary of the mayor, void.

The statute authorizing the city council to fix the mayor's salary does not prescribe the particular manner in which the council shall act in so doing. In the absence of any mode prescribed by law, the council may in its discretion, exercise its power in any usual and appropriate manner. 28 Cyc. 275, and cases cited. See also *State* v. *Nichols*, 83 Minn. 3; *Fountain* v. *Mayor*, 50 Mich. 260.

The proof shows that the monthly allowances were made by vote of the city council, and it is not contended by appellants that these allowances were made in any but the usual and appropriate way. It was not alleged, nor is there any proof that the action of the city council in fixing the salary of the mayor in the manner indicated was an actual fraud or resorted to for the sinister purpose of evading the law prohibiting a mayor's salary from

being increased or diminished during the term for which he is elected.

Taking the testimony as a whole, we are convinced that the action of the city council, as shown by the testimony of Mord Roberts and the regular monthly allowance of "expense accounts" and the ordinance of January 18, 1916, was tantamount to fixing the salary of the mayor at the sum of $150 per month in addition to the annual salary of $125, and that such was the amount of the salary or compensation of the mayor as fixed by the council at the time that appellee, Pixley, qualified as mayor. Therefore, so far as the intervener was concerned, this action of the council did not fall within the provisions of the law forbidding the salary or compensation of a mayor to be increased or diminished during the term for which he may have been elected. Secs. 5483 and 5617 of Kirby's Digest.

The resolution of July 1, 1917, appropriating the sum of $150 per month out of the general revenue of the city "for the current and incidental expenses of the mayor's office," when viewed in connection with the action of the council prior to the time when Mayor Pixley qualified as mayor, showed that it was the purpose of the city council to continue to make appropriations for the salary of mayor the same as it had been fixed before, and as it existed at the time when Mayor Pixley entered upon the discharge of the duties of his office.

It follows that the court did not err in entering a decree dismissing the complaint for want of equity, and such decree is therefore affirmed.